**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 1:22-CR-376 |
| | : | |
| v. | : | (Judge Neary) |
| | : | |
| RUDY MENDOZA, | : | |
| | : | |
| Defendant | : | |

### MEMORANDUM

Presently before the court is the government's motion *in limine* (Doc. 72), filed in anticipation of trial. The government seeks to limit the testimony of Dr. Joseph Cohen, a forensic pathologist, and to preclude the testimony of Janet Perdue, a proposed prison expert. (Id. at 4). Defendant Rudy Mendoza opposes the motion. (Doc. 77). The motion has been fully briefed (Docs. 73, 77, 78) and is ripe for disposition.

For the reasons set forth below, the government's motion *in limine* will be granted.

### I.    Factual Background & Procedural History[1]

On October 19, 2021, a federal grand jury returned a two-count indictment charging Mendoza with second-degree murder in violation of 18 U.S.C. § 1111(a) and manslaughter in violation of 18 U.S.C. § 1112(a). (Doc. 1). The charges arise

---

[1] The following factual background is derived from the parties' submissions and the court's review of the docket. The facts are recited solely for the purposes of resolving the instant motion.

from the death of Mendoza's cellmate, Ricardo Martinez, at the United States Penitentiary Canaan ("USP Canaan"). (Doc. 1 at 1-2).

At the time of the incident, Mendoza and Martinez were housed together in the Special Housing Unit ("SHU") at USP Canaan. (Doc. 73 at 2). On July 30, 2019, at approximately 6:43 a.m., Corrections Officer (C.O.) James Santarelli responded to an inmate duress call from the cell. (Id. at 2). Upon arrival, C.O. Santarelli observed Martinez lying on the bottom bunk with a sheet pulled up to his shoulders. When asked whether Martinez was alright, Mendoza allegedly responded, "No, everything is not ok" and "you gotta get somebody down here." (Id. at 2).

C.O. Cory Vrabel arrived outside the cell at approximately 6:45 a.m. and ordered Mendoza to "cuff up," with which Mendoza complied. Mendoza was then removed from the cell and transported to a nearby holding cell within the SHU. (Id. at 3). Medical personnel subsequently arrived and were unable to detect a pulse in Martinez's right carotid artery. (Id.). Paramedics arrived, and after consultation with a medical command physician at Moses Taylor Hospital, Martinez was pronounced dead. (Id.).

Dr. Gary Ross, M.D. performed an autopsy on July 31, 2019. (Id. at 3). Dr. Ross determined that the cause of Martinez's death was "cardiorespiratory collapse secondary to multiple traumatic injuries secondary to physical assault," and classified the manner of death as homicide. (Id.).

On January 5, 2026, Mendoza notified the government of its intent to call Dr. Joseph Cohen at trial as an expert in forensic pathology and Janet Perdue as a

prison expert. (Doc. 72 ¶ 3). The government acknowledges Dr. Cohen plans on testifying about admissible and relevant facts. (Id. ¶ 4). At the same time, Dr. Cohen also plans on testifying that with more prompt medical treatment, Martinez would have survived his injuries. (Id. ¶ 5). Further, Ms. Purdue plans on testifying about the Bureau of Prisons' ("BOP") various policies and apparent failure to follow those policies in this case. (Id. ¶ 6). The government moves to exclude these lines of testimony under Rules 403 and 701 of the Federal Rules of Evidence. (Id. ¶ 7).

## II.    Standard of Review

The court is vested with broad inherent authority to manage its cases, which includes the discretion and authority to rule on motions *in limine* prior to trial. See, e.g., Luce v. United States, 469 U.S. 38, 41 n.4 (1984); United States v. Larry, 537 F.Supp.3d 766, 768 (M.D. Pa. 2021). Courts may exercise this discretion to ensure that juries are not exposed to unfairly prejudicial, confusing, or irrelevant evidence. United States v. Romano, 849 F.2d 812, 815 (3d Cir. 1988). Courts may also do so to "narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1069 (3d Cir. 1990) (citing In re Japanese Electronic Products Antitrust Litig., 723 F.2d 238, 260 (3d Cir. 1983), rev'd on other grounds sub nom. Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574 (1985)).

However, courts must still follow the Federal Rules of Evidence. Federal Rule of Evidence 702 has three major requirements: "(1) the proffered witness must be an expert, *i.e.*, must be qualified; (2) the expert must testify about matters requiring

3

scientific, technical or specialized knowledge, *i.e.*, reliability; and (3) the expert's testimony must assist the trier of fact, *i.e.*, fit." United States v. Schiff, 602 F.3d 152, 172 (3d Cir. 2010) (cleaned up) (quoting Pineda v. Ford Motor Co., 520 F.3d 237, 244 (3d Cir. 2008)). The trial judge has "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597 (1993). Thus, "[t]he objective of that requirement is to ensure the reliability and relevancy of expert testimony." Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152 (1999). Finally, an expert's testimony, like all other testimony, must be relevant to the matter at hand pursuant to Federal Rule of Evidence 401, and more probative than prejudicial or confusing pursuant to Federal Rule of Evidence 403.

### III.   Discussion

The government moves to limit the testimony of Dr. Joseph Cohen to the extent it concerns proper medical treatment, including any opinion regarding whether Martinez would have survived had correctional officers conducted the required prison rounds, and to exclude the testimony of Mendoza's expert, Janet Perdue, in its entirety. (Doc. 73 at 6). The court addresses the admissibility of each expert's testimony in turn.

### A. Dr. Joseph Cohen

The government is concerned Dr. Cohen may testify that, had the required 30-minute prison rounds occurred per prison policy, Martinez would have likely been found alive and amenable to successful basic emergency and supportive care.

4

(Doc. 72 ¶ 5a). The government also takes issue with proposed testimony regarding what medical treatment BOP staff should have provided. (Id. ¶ 5b). To the government, this testimony is wholly irrelevant and would only confuse and mislead the jury. (Doc. 73 at 9).

In support, the government relies on United States v. Thompson, in which the Sixth Circuit affirmed the exclusion of expert testimony opining that a victim likely would have survived with different or more timely medical care. 119 F.4th 445, 452 (6th Cir. 2024). Mendoza responds that Dr. Cohen's testimony on this subject is relevant to causation and supports his theory that Martinez would have been discovered alive and amenable to successful medical intervention had the required prison rounds been conducted. (Doc. 77 at 10-11).

While not binding, the court finds Thompson highly persuasive and, applying it here, results in granting the government's request to exclude portions of Dr. Cohen's testimony. Thompson explains the general principle that alleged deficiencies in medical care do not break the chain of causation unless they were the "sole cause of the victim's death." 119 F.4th at 452 (citing United States v. Rodriguez, 279 F.3d 947, 951-52 (11th Cir. 2002)). Because Mendoza does not claim medical negligence was the sole cause of Martinez's death, any facts going to the existence of negligence are irrelevant for this case. Without any probative value,

these portions of Dr. Cohen's testimony would be excludable under Rule 401.[2] See Thompson, 119 F.4th at 542 (excluding similar evidence under Rule 401). Without any probative value, it also follows that allowing this testimony would only confuse and mislead the jury by admitting non-relevant negligence facts to a murder trial.

Additionally, setting aside Rules 401 and 403, expert testimony must always "fit" the issues in this case. See, e.g., Schiff, 602 F.3d at 172-73 (explaining that expert testimony must "fit" the facts of the case to aid the jury in resolving a factual dispute); Heller v. Shaw Industries, Inc., 167 F.3d 146, 158 (3d Cir. 1999) (noting it is "within the court's province to ensure that the conclusion, particularly a medical expert's ultimate conclusion on causation, 'fits' with the data alleged to support it"). Dr. Cohen's proposed testimony regarding whether Martinez would have been discovered alive, what medical treatment should have been provided, and whether Martinez would have survived with different or additional medical treatment is not relevant in determining Mendoza's criminal liability; therefore, it does not "fit" the issues in the case or assist the trier of fact. See FED. R. EVID. 702; In re Paoli R.R. Yard PCB Lit., 35 F.3d 717, 745 n.13 (1994) (explaining that the "fit" requirement "goes primarily to relevance" and requires that the expert's scientific knowledge be connected to the question at issue) (quoting Daubert, 509 U.S. at 591); In re TMI

---

[2] Although the parties do not raise Rule 401 as a basis for exclusion, the court, in its gatekeeping role, must "ensure that 'any and all expert testimony . . . is not only relevant, but reliable.'" See Pineda, 520 F.3d at 243 (quoting Kannankeril v. Terminix Int'l, Inc., 128 F.3d 802, 806 (3d Cir. 1997)).

Litig., 193 F.3d 613, 670 (3d Cir. 1999) ("expert evidence which does not relate to an issue in the case is not helpful").

Accordingly, Dr. Cohen will be precluded from offering opinions at trial concerning whether Martinez would have been discovered alive had required prison rounds been conducted, what constitutes appropriate medical treatment, and whether Martinez would have survived with different or additional medical treatment.

### B. Janet Perdue[3]

Mendoza further seeks to offer Janet Perdue as an expert in prison policy and procedures. (Doc. 77 at 4). Effectively, Perdue would testify about the various BOP policies and procedures, the failure to follow those procedures in this matter, and how that failure contributed to the death of Martinez. (See Doc. 77 at 5-6). In support of allowing this testimony, Mendoza relies on United States v. Gravely, No. 7:09-CR-13, 2011 WL 112468, at *9 (E.D. Ky. Jan. 13, 2011), in which a Kentucky district court denied a motion *in limine* seeking to preclude evidence of alleged BOP policy violations. (Doc. 77 at 7). However, Gravely is distinguishable. There, the court addressed the admissibility of factual evidence of staff conduct, not expert testimony interpreting compliance with internal policies. See Gravely, 2011 WL 112468, at *9. Further, Gravely involved allegations that BOP staff were directly

---

[3] The government, for reasons unknown, cites Federal Rule of Evidence 701 in its motion as a basis to exclude the testimony of Perdue. (Doc. 72 at 4; Doc. 73 at 14). But Rule 701 governs the admissibility of lay witness testimony, so it does not apply to Dr. Cohen or Perdue's proposed expert testimony.

involved in the underlying offense and worked with another inmate in the same cell to commit the murder. Id.

Here, there is no allegation that BOP staff conspired to kill Martnez. And, as established above, whether BOP staff was negligent is immaterial as it does not bear on whether Mendoza killed Martinez. This means the admissions of such testimony once again create a substantial risk of confusing the issues and misleading the jury. By focusing on whether correctional staff complied with internal policies, the defense risks shifting the trial's focus from Mendoza's conduct to the actions or inactions of prison staff and alleged deficiencies in BOP security practices and procedures. Because a violation of BOP policy does not, in itself, constitute a defense to the charged offenses, such expert testimony is more likely to mislead than assist the trier of fact. See FED. R. EVID. 403; see also In re TMI Litig., 193 F.3d at 670 ("expert evidence which does not relate to an issue in the case is not helpful"). Accordingly, Perdue will be precluded from offering expert testimony at trial.

8

## IV.   Conclusion

Even if the inactions of BOP staff were at least partly responsible for Martinez's death, such facts do not exculpate Mendoza for the death of Martinez. None of the excluded portions of the proposed testimony by Dr. Cohen or Perdue would cast any doubt on whether Mendoza was either the but-for or proximate cause of Martinez's death. Therefore, such testimony is irrelevant, and the court will grant the government's motion to exclude it. An appropriate order shall issue.

/S/ KELI M. NEARY
Keli M. Neary
United States District Judge
Middle District of Pennsylvania

Dated:   April 28, 2026

9